**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DION HARDING,

Plaintiff,

v. Case No. 8:26-cv-2009-KKM-CPT

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

---

# ORDER

Plaintiff Dion Harding sues credit reporting agency Experian Information Solutions, Inc., under the Fair Credit Reporting Act (FCRA) for "failing to clearly and accurately disclose [to her] all information contained in Plaintiff's consumer file."[1] Compl. (Doc. 1) ¶ 1. On July 16, 2026, I directed Harding to show cause as to why the action should not be dismissed for lack of standing. *See* (Doc. 4). Upon review of Harding's response to the order, Resp. (Doc. 5), I conclude that she fails to sufficiently allege standing and so I dismiss the complaint for lack of jurisdiction.

---

[1] Harding filed a nearly identical suit against Equifax Consumer Services, LLC. *See Harding v. Equifax Consumer Services*, *LLC*, 8:26-cv-2010-KKM-CPT (M.D. Fla. July 14, 2026).

To satisfy Article III's standing requirements, a plaintiff must allege that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Id.* at 341; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 441–42 (2021). In other words, "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341).

For an alleged informational injury, a plaintiff must identify "downstream consequences from failing to receive the required information." *TransUnion*, 594 U.S. at 442 (citation modified). Such consequences include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. Traditionally, courts recognized "reputational harm" as a cognizable injury. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (en banc). "[F]alse" or "misleading" credit reports "can lead to [a cognizable] reputational harm if publicized." *Id.* So, a plaintiff likely has standing if "the alleged information deficit hindered their ability to correct erroneous

information before it was later sent to third parties." *TransUnion*, 594 U.S. at 425. But "no reputational harm at all occurs when [false or misleading] information is kept private." *Hunstein*, 48 F.4th at 1244.

As relevant here, 15 U.S.C. § 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: All information in the consumer's file at the time of the request." Harding alleges that, although she requested her consumer file, "Experian omitted the full account number, omitted account information, and omitted payment history relating to [various] tradelines" and "failed to disclose any file or information maintained by its affiliated consumer reporting entities," Compl. ¶¶ 16, 48, which prevented her "from identifying, understanding, and verifying those accounts against her own records," *id.* ¶ 47. According to Harding, "[t]he lack of accurate and complete account numbers, account information, and payment history caused Plaintiff great frustration and emotional distress when trying to understand her credit reports and verify them against her own records." *Id.* ¶ 29.

Harding does not sufficiently allege adverse consequences flowing from Experian's alleged statutory violation of FCRA's disclosure requirement. To be sure, Harding is right that FCRA's "disclosure . . . requirements are designed to protect consumers' interests in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to

third parties." *TransUnion*, 594 U.S. at 440. Congress, however, never explained "how a technical impairment of a consumer's ability to monitor a credit report—that carries no actual consequences for the consumer—rises to the level of an Article III injury." *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019). Ultimately, Harding must still allege either disclosure of inaccurate information to third parties or a sufficient risk thereof based on her inability to review her full credit file. *See Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1354–57 (11th Cir. 2025).

At most, Harding claims that "the practical inability to invoke her own statutory dispute rights" constitutes a downstream consequence with a " 'close relationship' to the common-law tort of denial of access to information one is legally entitled to receive." Resp. at 4. That argument substitutes one "bare procedural violation" for another without saying anything more about an alleged common law comparator. *See Spokeo*, 578 U.S. at 341; *see also Huff*, 923 F.3d at 467–68 (rejecting the idea that Section 1681g(a)(1) contains the kind of "interlocking statutory protections" necessary to "provide a shield from imminent economic harm"). More, although Harding references her "statutory dispute rights," Resp. at 4, she does not allege that there is anything to dispute in the first place. Harding does not allege that any items in her credit file are substantively inaccurate, that Experian disclosed inaccurate information to third parties, or that she suffered loss of credit opportunities. And she does not

allege how she "would have tried to correct [her] credit files—and thereby prevented dissemination of a misleading report—had [she] been sent the information in the proper format," or with the allegedly omitted tradeline information included. *TransUnion*, 594 U.S. at 440.

Nor do Harding's efforts " 'playing detective' as to the accuracy of her own file," or the "frustration and emotional distress" inherent in doing so, suffice for adequate harm. Resp. at 4 (citing Compl. ¶ 23); Compl. ¶ 29. In *Nelson*, the Eleventh Circuit held "that spending money and time attempting to correct errors on a credit report that has not been published to a third party or otherwise affected a plaintiff fails to satisfy the standing requirements of Article III." 144 F.4th at 1352. Rather, "any assertion of wasted time and effort necessarily rises or falls along with . . . whether the risk posed by . . . [the statutory] violation, as pleaded by [the plaintiff], is itself a concrete harm." *Id.* at 1354–55 (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc)). To the extent that pre-*Nelson* cases recognized "emotional distress and time [the plaintiff] spent contesting the inaccurate information" as a concrete injury, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021), even those cases reasoned that a plaintiff must allege that the distress or time relates to an inaccuracy which has, or will, cause harm, *see Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (concluding that "lost time" disputing a credit inaccuracy was a concrete injury

in part because the plaintiff's "credit score dropped 100 points as a result of the challenged conduct").

At bottom, Harding does not allege that she has suffered, or will suffer, loss of credit opportunities based on the file's disclosure or her inability to verify the omitted tradeline information against her own records. Insofar as she claims that Experian's violation "impair[s] [her] ability to evaluate her own credit file," Resp. at 6, Harding does not identify a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341 (citation modified). Harding therefore does not allege a concrete harm that satisfies Article III's standing requirements.

Accordingly, the following is **ORDERED**:

1. Harding's Complaint (Doc. 1) is **DISMISSED** for lack of subject matter jurisdiction.
2. The Clerk is directed to **TERMINATE** any pending motions or deadlines and to **CLOSE** the case.

**ORDERED** in Tampa, Florida, on July 27, 2026.

Kathryn Kimball Mizelle
United States District Judge